is 2016-1813, Dragon Intellectual Property versus Unified Patents. Mr. May? Good morning, Your Honors. May it please the Court. Dragon raised a single issue in this appeal. That is, whether the prior reference ALMA inherently discloses the solely limitation of the claimed control circuit. The solely limitation is a very narrow limitation. You say that's the sole issue, right? Correct. That's the sole. But what about obviousness? Because I thought that I saw in the red group, anyway, that they have the position that, alternatively, the PTAB found the obviousness. The inherency finding is what's found in the context of obviousness analysis. And the law there is very clear. In order for inherency to apply, the limitation at issue necessarily must be present in the prior references. And the issue here today is the prior reference ALMA does not teach that particular limitation, the solely limitation. And you don't think there's an alternative argument that, even if it's not inherent, one of ordinary scholarly art would have been motivated to have just one key? Your Honor, that was not in the final written decision by the board. And in fact, the board actually addressing a separate issue regarding the keyboard having a record key and playback key, the board specifically found that element was taught under inherency and also as obvious in light of the combination of the prior, but not with respect to the solely limitation. And the board's analysis with respect to the recited control circuit, which includes the solely limitation, is very limited. Just a single paragraph of the final written decision. I'd like to ask a follow-up question based on your discussion with Judge Stoll. Would it be fair to say that the board found, because this prior art does disclose a remote, but it doesn't talk about what's on that remote. It could be a knob, a toggle switch, buttons. I mean, most of my remotes have buttons, but they don't have to. Is that right? Correct. And the board then found that the buttons would be inherent, but then they also found, and I'm at page 16 of the appendix, if that helps you focus on where I am. The board found it would be inherent, but then they also found, based on this evidence, we are persuaded it would have been within the knowledge and ability of one of ordinary skill to control Ulmer's device with a remote control that includes play and record buttons. So they did find obviousness with regard to buttons. Correct. But do I understand your argument to me, that's not the same thing as finding one-button play or a control circuit that causes one-button play. That's exactly the reason. Because the board knew how to conduct obviousness analysis in addition to inherency analysis. With respect to the limitation about keyboard having a record key and playback key, the board did use two alternative reasonings here to find that element is present. The buttons. Right, right, the buttons. But not the solo. Solo, yeah, not the playback key. And for that, they found only inherency. Correct. Yes, it's hard for me to understand how this is inherently present. OK, thank you, Your Honor. That's the reason in this appeal, dragging reason only a single issue, not about the keyboard having buttons. Even if a keyboard having buttons, there could be a situation where after recording has begun, there's a stop key, then a playback key, for example. And in this particular case, Alma actually. In fact, in many, if not most of the references at the time, you had to push a rewind button and then a play key in order to get play. Yes, Your Honor. And there's nothing about this reference that would suggest that the same type of two-button activation might not be required. In fact, there could be additional options. Dragon provided multiple examples here for Alma specifically, because this reference teaches skipping commercial breaks. So even looking at, Your Honor, I'm going to point to page 8 of the blue brief where we listed five steps from Alma. And here, the second step is waiting for the time T. And this T is very unique. It corresponds to almost the duration of all of the advertising breaks. So Alma really teaches about, for example, if there are two hours programmed, and there's five commercial breaks, each is two minutes. So Alma teaches you have to count all of them together. It's 10 minutes. Then after program starts, after 10 minutes, then the playback can begin. So the next step is starting playback. And that's not mentioned using any button at all. So that's the reason, actually, the first Dragon's example was the Alma device could be programmed in a way to initiate playback automatically after predetermined time T without any key. And also, note the language almost, time T that corresponds to almost the duration of the advertising breaks. And if any advertising break lasts more than two minutes, so potentially, a user could use an add one minute key to account for the duration of commercial breaks. That's another example Dragon provided. And Dragon further provided a timer key to remind the user to start playback, because Alma teaches you wait through the entire, I mean, you have to know entire commercial break duration in order to start playback. So therefore, I think- Well, but the board did reject the automatic playback button, automatic playback argument that you just made, didn't it? Didn't the board reject that? Because they said it is, in fact, operator control, user control. Right, I think the board rejected in connection, not specifically, not addressing the inherency issues. No, but Omer does say it's user control. Correct. Don't go too far. All right, right. Thank you, Your Honor. So regardless, the inherency requires, the law is very clear, right? Even last month, I think October, September, is the case, the opinion issued by this court, Southwire v. Sierra Wire, that makes very clear the user inherency in the context of obviousness must be carefully subscribed, because that which may be inherent is not necessarily known, and that which is unknown cannot be obvious. And here, even if it cannot be automatic playback, still does not mean that the playback key was the sole button that was pressed to start playback. So your understanding of our law, there's some statements in our law that talk about the element must naturally flow from the reference. Is your understanding that means something different than it must necessarily be present? No, not at all, Your Honor. I think the board appeared to be confused. We don't know exactly what the standard the board used in the connection of the standard for inherency. The board actually used natural result as a keyword. That test, it seems to suggest that the board did not use necessarily must be present standard. For some reason, those are two standards. But in par pharmaceutical, I think even though the court used the language necessarily must be present or natural result, and that case really is talking about pharmaceutical compounds, right? Sometimes natural result of a pharmaceutical compound equates necessarily must be present. And it's very clear reading in the context, the Federal Circuit only applied one standard for inherency, which is necessarily must be present. So go back to the same case, the Southwire v. Serowire. The court, the opinion there actually cited par pharmaceutical again. And in the end, that opinion stated, the test is necessarily must be present. So even though there are confusion with respect to whether there's natural result or necessarily must be present, the board may be confused. But I think the case law, the body of the case law here make very clear the test for inherency is necessary must be present. And also in the obviousness analysis, that standard is extremely high. The board cannot meet its standard. And let me just add one thing. Because the board's reasoning is so thin, it did not provide the requisite notice to the public regarding its reasoning. The Supreme Court in case R has held to facilitate review, this analysis should be made explicit. Now we are left at, you know, guessing what exactly the board found or did not find. And the board's, I mean, the analysis cannot be sustained by mere conclusory statements. And here Dragon's experts testified that one button playback would be, wouldn't necessarily be supported by Alma's control circuit. But her cited reference, I mean, her cited evidence refers to other limitations, not to the sole limitation. You are using up your rebuttal time. Would you like to save that? I'm going to save that for my rebuttal time. Very good. Thank you, Mr. May. Mr. Kiknis. If it pleases the court, Michael Kiknis for Unified Patents. Good morning, your honors. There is one question in this case. And that question is whether substantial evidence supports the finding by the board of one button playback, which is what we call it, they call it the solely limitation. This isn't a question about inherency as they would like to frame it for this court. Rather what the board did and what we argued below is whether the electronic device of Alma itself performs the functionality of one button playback. We showed to the satisfaction of the board that it does. Then the question is, well, is there a control circuit to perform that functionality? This is an electromechanical device. Well, sir, I think that what you argue to the board is well and good, but what we review is the board decision. We don't review your arguments to the board. So why don't you focus on what the board actually held explicitly on pages 16 and 17 of its opinion instead of what you argued to them, but they may not have actually expressly stated in the opinion. I believe that they did, your honor. And let me point you to this paragraph of page 17 of the joint appendix. Now this paragraph is what Dragon points to as saying, aha, there wasn't any finding of the solely limitation. But first. Well, there was a finding, but the finding was that it is inherently included. I don't believe, I wouldn't characterize it that way, your honor. Despite the fact that that was the word the board used. Therefore we find Omer inherently includes the recited control circuit. You wouldn't say that's a finding of inherency by the board? Yes, your honor. But first they addressed the functionality. What they said was that unified, here it is, about 12 lines down. We find the petitioner has provided sufficient evidence to show that Omer teaches the recited simultaneous recording and fit playback. I don't think he's disputed that. He hasn't once mentioned anything about the simultaneousness. That's a different issue than the one button. So, okay, go ahead next. I don't believe so, your honor. Because if you look at page 12 of the appendix, this simultaneous recording and playback limitation includes the solely language. On page 12 of the joint appendix, you'll see this limitation is what the board was looking at. Actually, if you look at page 17, just further up lines three through seven, that limitation is quoted. Yes, your honor. But I'm having a hard time along with Judge Moore and seeing why it's not talking about inherency. Because even if the passage that you referred us to at the bottom of the paragraph, it says Omer must have this and must have that. And says inherently, triggering, inherency and not obviousness. Right. I think the way I read this opinion is that the board found that the functionality of the device was obvious. And this gets to your point, Judge Moore, about the obvious matter of design choice of the buttons. They showed through the preceding 10, 11 pages of the decision that the functionality was obviously, as a matter of obviousness, was being performed by Omer. And therefore, in this one sentence that they quote to, is it inherent that there's a control circuit there? I agree with you. There could be a slim difference here in terms of that everyone agrees the functionality might be in Omer, that there's evidence to support that and the board addressed that. But what about, we're talking about something separate, which is the idea of when the user actuates the record key and then subsequently and solely actuates the playback key. That's the part that you don't see the board addressing until page 17. Your Honor, I would disagree with that. I would, respectfully, I would say that on page 10, of the joint appendix, you'll see that the board specifically says that we have reviewed all of the evidence and arguments, our detailed explanation of the prior art. I'm sorry, where are you quoting? This is on page 10 of the joint appendix, Your Honor. In the first paragraph, the board says we have reviewed petitioner's detailed explanation identifying where each limitation is there. And they are convinced on the last sentence, on this record, we're persuaded that petitioner has shown by a preponderance of the evidence that Omer and Goldwasser teach each limitation of claims one and two. Correct. They then go, yes, Your Honor. So what they concluded was not that it would be, one of these limitations would be obvious in light of the reference. What they conclude here is that they teach each limitation. That is different from a conclusion that one of the limitations would be obvious to a skilled artisan in light of the reference. So, I don't see how that doesn't actually hurt you tremendously rather than help you. I think that what the board, Your Honor, is doing here, I think it does help us. I think the board is just saying that we've relied upon. I can see that you think that, but I don't follow your logic. Well, I think what you need to read from this language is that the board is saying we've reviewed all of the evidence of the petitioner. And we believe that these two references teach all of the claim limitations. I think that's perhaps loose language by the board, but in the following pages. So wait, so what you now say is loose language by the board because you've done enough patent cases to know that when you say a reference teaches this element, it means that reference discloses that element. It does not mean, and nor would the board ever say, it means that element is obvious in light of the reference. Those are two different concepts. You're a patent lawyer, you know this. So you now have to tell me that this is loose language in order to get where you want to go. I wish you hadn't even pointed the language out because it doesn't help your case at all. It only hurts your case. Your Honor, I respectfully disagree. I would say that this language supports our case. Do you have other parts of the opinion that you're relying on? What's that? Do you have other parts that you're relying on? Yes. I would say, just to respond to Judge Moore, though, I would say that what the board has done here is said we're relying upon the petitioner's arguments and evidence. And now I would cite you, Judge Stoll, to pages 12 and 13 of the joint appendix, where now, at the very bottom, the board of 12, the board is saying, because this claim language recites said playback key is subsequently and solely actuated to begin delay playback, petitioner describes claim one as requiring one button playback. And then they go on in that paragraph and they cite 31 to 32 of our brief, which cites to paragraph 66 to 69 of our expert's declaration, which from support of Alma itself, as well as Hold on. Am I confused? Isn't this entire paragraph simply an articulation of what your arguments are? Do you view this paragraph as the board adopting all of those arguments? I believe, to answer your question, Your Honor, yes. I believe that the board credits our arguments. Where did they do that? Because each sentence is the petitioner argues, the petitioner asserts, the petitioner describes. Where is the sentence that says, and we agree? I would say that at the beginning on page 10, the board says, as I pointed you to, the board specifically looks at our entire petition and our declaration says, we're convinced that by a preponderance of the evidence, the petitioner has proven its case, and then goes on to recount our arguments and to rebut the patent owner's arguments. The board uses the words petitioner asserts. Yes. Probably about 50 or 60 times in this opinion. Look at it. Yes, Your Honor. And so are you saying to me that the one sentence in the beginning on page 10, which says, on this record, we're persuaded the petitioner is shown by a preponderance of the evidence that Omler and Goss-Water teach the limitations of claim one and two, is an explicit adoption of every one of the next 50 or 60 sentences which articulate your arguments that were made and cite your briefs? That one sentence on page 10 is now an explicit adoption of everything you've said thereafter? Your Honor, yes, in conjunction with that page on page 10, as well as on page 17, 18, and 21. On page 17, we find, the board says, we find that petitioners provide sufficient evidence to show that Omler teaches the recited simultaneous recording and playback, that whole limitation. Page 18, and we are persuaded petitioners' assertions and evidence show sufficiently the resulting system would include each of the limitations of independent claim one and dependent claim two. And now, again, that's language saying that the references disclose, they contain each of the limitations. But there is no dispute that Omler doesn't even disclose buttons. The word buttons or keys, it doesn't appear in the Omler reference anywhere. So you have to get to obviousness in order for you to succeed, because Omler just talks about a remote. A remote could have a toggle switch. It could have a knob. It could have all kinds of things. There was ample evidence in the record, Your Honor. Am I missing something? Does Omler disclose buttons or keys anywhere in it? It does not, Your Honor. Our position has been that it discloses remote control operation as operated by a user. And we presented a case below, and the board found that it would be inherent to have a record and playback button on that remote, and it would also be an obvious matter of design choice. So those buttons. That's true, but where did the board say, and would it be an obvious design choice to have a single button playback? I just don't see it here on the inheritance issue. And I just want to back up for a minute. I apologize, because I'm asking you two questions. Sure, that's fine. If you look at page 13, even in the language that you cited, where it provides your position, everything that is said here is one of ordinary skilled in the art would understand what Omler's system includes. Would understand what it includes signals inherency or a direct teaching. It doesn't signal obviousness. One of ordinary skilled in the art  for reason blah, blah, blah. There's nothing like that in here, either on any of the pages you've cited so far. So where do you think that is? That the board is considering obviousness, Your Honor? I mean, I think that. For this particular limitation. Well, I think that, number one, the board, as I pointed this court to, on the bottom page 12 and on 13, it's crediting our evidence. I think that's number one. But there are also subsidiary factual questions here. There's evidence in the record, as the board says on pages 7 and 8, for example, in the joint appendix 7 and 8. They specifically find and describe how the Omler device is independent record and playback, simultaneous record and playback, that the mechanisms for record and playback are different, and that it's controlled by a remote control. And they also cite, on page 8 of the joint appendix, this three-step process, which counsel described, where you record, start recording, you wait, and then you play back. If you tie that all together with control by a remote, user control by a remote, that, as a matter of obviousness, has buttons on it, that's one-button playback. I mean, I think it ties all together nicely, Your Honor. And I think that that's what part of it. But I understand what you're saying here for us today. What I'm asking you is, where is this obviousness discussion of one-button playback in the board's decision? Because the board's decision, and here, it talks about would understand, what somebody would understand. And the cite that you gave us on page JA-17 is talking about, we find Omler must have this limitation. There's nothing about obviousness for that particular limitation, help me. I disagree, Your Honor. I think that what the board has done, starting on page seven, and then again on 10, and continuing all the way up, is what they've described is that the prior art discloses each of the limitations. The one place where they do use obvious matter of design choice is with respect to the buttons being on the remote control. And I think when you tie that all together, again, at page 17, the paragraph on page 17, which counsel refers to, I think now the board is saying, okay, we see everything in here. And by the way, it's gotta be inherent that there's a control circuit. So I think that's the way I read their decision. So Your Honor, I think as we've just described, there were two issues that Dragon alleges that the board didn't even address one-button playback. I think I've shown to this court that in fact, that they did and that it's supported by substantial evidence. This court should therefore affirm the decision below. But even if this court disagrees, this case should be remanded to the board for further consideration and not reversed. Thank you, Your Honors. Okay, thank you. Counsel, you have some rebuttal time. Thank you. Please proceed. Yeah, Your Honors. Unified expert testified that one-button playback would necessarily be supported by almost control circuit. So in the underlying proceeding, Unified argued inherent disclosure, not obviousness. Therefore, this case should be not remanded back, but the board's obviousness finding should be reversed because nothing in the evidence supports obviousness argument. There's only an inherent argument made by Unified's patent. Okay, thank you, Mr. Meng. Is there anything else? Okay, good. Okay, the case is under submission. Thank both counsel for their argument. Our next case is 2016-2186, Dragon Intellectual Property versus Apple.